STATE OF IOWA, Appellee, v. HARDY FRIEND, Appellant.

JUNE 26, 1928.

REHEARING DENIED SEPTEMBER 28, 1928.

*F. E. Northup*, for appellant.

*John Fletcher*, Attorney-general, and *Neill Garrett*, Assistant Attorney-general, for appellee.

DE GRAFF, J.—The appellant is a resident of Marshalltown, Iowa, unmarried, and resides with his mother in her home at 307 North Center Street, Marshalltown, Iowa.

On the 31st day of December, 1926, a liquor search warrant was issued from the municipal court of the city of Marshalltown, signed by B. O. Tankersley, Judge, directing any peace officer of Marshall County, Iowa, to search certain premises described, to wit:

"The dwelling house of Mrs. A. M. Friend at No. 307 North Center Street, Marshalltown, Iowa, occupied by Hardy Friend; also the automobile owned and operated by Hardy Friend."

Under said search warrant, a search of the premises was

made, and there was found certain intoxicating liquor, consisting of four gallon cans of alcohol, secreted in the bottom of an old upright piano, and two bottles of whisky, concealed under the framework of a dining-room table.

Upon the trial of this cause, the appellant testified that, when he moved back to Marshalltown from Albert Lea, Minnesota, about the year 1922, he brought liquor (alcohol and whisky) back with him; that he acquired the alcohol and whisky shortly before the country went dry; that it was sent by freight, with other goods; that he put the liquor in the cellar, and turned it over to his father, who was then living; that he went back to Minnesota, and after fourteen months' absence, returned to Marshalltown; that he did not know that these bottles and four gallons of alcohol were concealed in the bottom of the piano, or that the whisky was concealed under the table; that he did not have a drop of liquor on the 31st day of December, 1926, in that home. He further testified:

"I knew that my mother and father had had this stuff, but I didn't know what they had ever done with it, because they had never told me; but I made up my mind, during the hour or hour and a half they [the officers] were there, if anything was found, that I would lay claim to it, and protect my mother. I wouldn't allow that she take the blame. I laid claim to it to shield mother. It is not mine, and I did not put it there. I did not take any liquor to my mother's home except that I brought down from Albert Lea. I didn't own, possess, or keep this liquor. I did not put those two bottles underneath the table, and do not know who put them there."

The captain of the police force of Marshalltown who conducted the search testified:

"I observed a lot of empty bottles and cans about the place. There were probably three dozen or more empty bottles in a closet off the kitchen, and also a small funnel there. The other bottles were in a north room of the basement, in two crates. There were probably 150 of them altogether, in sizes of pint and one-half pint bottles, but they were empty. There were some empty cans there. Three or four of them smelled like alcohol. Friend [the defendant] said he didn't have anything, but when we opened the piano, he said: 'They have

found it.' He said in the police station to Officer Piper something about being hard to catch, and Piper replied: 'Yes, you were. I am willing to shake hands on that,' and he said: 'That is damn good stuff. You better get yourselves some of it.' "

Officer Piper testified that, when the search was being conducted, the defendant came downstairs, and said: "You have found it; it is mine," and that he then went to the dining room, and said, "Mother, they have found it."

This, in brief, is the material evidence submitted to the jury, and it is ample to sustain the verdict returned.

I. One vital question is involved on this appeal. This question has to do with the complaint made by the appellant that the issuance of the search warrant by the magistrate was violative of constitutional provision, and further, that the evidence secured through said search warrant was inadmissible upon the trial of this cause. Neither of these contentions is well based. The magistrate issuing the warrant recited in the warrant itself:

"And the court finds that from the evidence that there is, in fact, sufficient ground and reason that a search warrant issue for said premises and car."

Nor may it be said that the verified information filed by a resident of Marshall County, upon which the search warrant issued, is an affidavit of belief only, since it is therein recited, after describing particularly the premises to be searched, and naming particularly the liquors to be seized:

"And that said liquors are owned and kept by above named defendant, or by another with his consent, and that said liquors are intended by him to be sold or used in violation of law, or had been purchased or procured as the result of solicitation, or had been manufactured or transported in violation of law."

It is true that, under constitutional provision, the right to issue a search warrant rests upon facts showing probable cause, as distinguished from an informant's belief or conclusions existing at the time the showing is made.

"No warrant shall issue but on probable cause, supported

by oath or affirmation." Constitution of Iowa, Article I, Section 8.

As said in *Burtch v. Zeuch,* 200 Iowa 49, 39 A. L. R. 1349:

"It is the quite universal holding of the courts of last resort of the several states of the American union, and of the Federal courts of the United States, that an information based upon mere belief and unsupported by sworn facts is not a basis for the issuance of a legal search warrant."

It is further held in the *Burtch* case, supra:

"We will not presume that the issuing magistrate failed to respect constitutional and statutory provisions. On the contrary, we recognize the presumption that sworn public officials, in the performance of their duties, have legally acted, in the absence of evidence to the contrary. The law presumes the regularity of official acts; and, the information being *prima facie* valid, we must hold that the warrant issued in conformity to law."

The constitutional limitation quoted supra does not contemplate that the probable cause to which reference is made must be shown in the information itself. It may be established on sworn testimony taken before the magistrate prior to the issuance of the warrant. The magistrate who issues the warrant must exercise his own judgment on the sufficiency of the ground shown, and as he has made a finding "that from the evidence there is, in fact, sufficient ground and reason that a search warrant issue," under the instant record, this finding is conclusive. The fact that the dwelling searched was the home of the mother of this defendant is not fatal to the validity of the search warrant, nor an impeachment of the legality of the issuance thereof.

II. Error is predicated in permitting the county attorney, over objection, to use the minutes of the grand jury to refresh the recollection of the witness A. L. Frazier, called in chief by the State. The abstract of record contains four printed pages of the direct examination of this witness, and at this point, and after this much testimony had been given, the county attorney handed the witness the minutes of the testimony taken before the grand jury,

with the request that the witness refresh his memory, to determine whether he had overlooked any matter. This witness was a police officer of the city of Marshalltown, and was present when the search of the premises was made. At the time the grand jury minutes were tendered the witness for the purpose stated, counsel for the defendant entered an objection, on the ground that the witness "does not need his mind to be refreshed," improper method of examination, hearsay, incompetent, and leading. Upon the overruling of the objection, the following record was made:

"Q. Do you recall something further that was said there? A. I do. Q. What further do you recall? A. He [the defendant] said: 'I have beat the law for a long time,' or words to that effect. I heard him say: 'Mother, they have found it.' "

Apparently, from the answer made, there did exist a reason to refresh the memory of this witness. Another method could have been adopted by the county attorney, to secure the same result. The claim of appellant that the witness was not hostile or adverse does not meet the situation. He did finally testify from his own personal recollection, after having his memory refreshed in the manner indicated. There was no error here. See *State v. Lewallen*, 198 Iowa 382.

III. Appellant stresses the fact in argument that there was no evidence of sale. The jury was told, in the charge given by the court, that the State had the burden to establish, beyond a reasonable doubt, (a) that the defendant used a certain place known as No. 307 North Center Street, Marshalltown, Iowa; (b) that such place was used for the purpose and with the intent to then and there willfully and unlawfully keep for sale intoxicating liquors, to wit, whisky and alcohol; (c) that the defendant did then and there keep for sale alcohol and whisky; (d) that such acts occurred within the county of Marshall and state of Iowa, on or about the 31st day of December, 1926, and within three years prior to the filing of the indictment of this case, which was returned January 12, 1927.

The court further instructed, and correctly so, that the crime of maintaining an intoxicating liquor nuisance does not

necessarily include a sale of the liquor so kept, but does consist in maintaining a place wherein intoxicating liquors are kept for the purpose of and with intent to sell, and that:

"In the absence of any evidence of sales, if you should find that alcohol and whisky were kept on the premises, you may gather the intent with which the same were so kept from the evidence of the surrounding circumstances, or from admissions, if any, of the defendant."

We have given the instructions a careful reading, and discover no basis for legal criticism. There is no question but that intoxicating liquor was found upon the premises in considerable quantities. There is more than tacit acknowledgment of ownership on the part of the defendant. In effect, he admitted that he had been guilty of violating the law, and stated that he had been a "hard one to catch." The evidence shows that empty one-half-pint and pint bottles were found on the premises in great abundance, and the police officers testified that there were considerably fewer bottles on the premises when they made the raid on December 31st than there were on the previous raid, to wit, August 6th. These matters were competent for the jury to consider on the question of intent. The testimony of the defendant created a conflict in the evidence, and it was for the jury to say who should be believed.

IV. Lastly, it is contended by the appellant that the trial court erred in overruling a request by the defendant, as part of his motion for a new trial, to call certain members of the  trial jury for examination as to alleged matters of derogatory and inflammatory character, to justify the claim that the jury was guilty of misconduct, and that the verdict was the result of passion and prejudice. It may be observed that no affidavit of any juror was filed, nor was any showing made which would justify the trial court in pursuing the drastic method offered by the defendant, which must be viewed as a proposed excursion into the field of speculative fact and circumstance. A verdict cannot be impeached in the manner suggested. There was no abuse of discretion in overruling the motion for new trial on

this ground or upon any ground alleged in the motion. The judgment entered is—*Affirmed.*

STEVENS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.